STOKER, Judge.
This is a case in which the second wife of a decedent seeks reimbursement for mortgage payments made by the community between herself and decedent on a house co-owned by the decedent and his children. The trial court held that she was not entitled to reimbursement for the mortgage payments.
Thomas Morris Skinner died intestate on December 23, 1981. He was survived by his second wife, Martha Singletary Skinner, and two children of a former marriage, Sharon Skinner Fuller and Tom M. Skinner, Jr. During their marriage the decedent and Martha Singletary Skinner lived in a house purchased during the marriage of the decedent and his first wife. After the death of Mr. Skinner’s first wife, one-half interest in the house was owned by Mr. Skinner’s separate estate, and one-half interest in the house was owned by the children of the decedent.
Martha Singletary Skinner brought her claim for reimbursement and other relief not of concern here by way of a rule to show cause against the two children of the deceased and against Sharon Skinner Fuller as administratrix of the estate of the deceased.
The community between Martha Single-tary Skinner and decedent paid a total of $12,313.89 in mortgage payments against *536 the mortgage encumbering the house. Martha Singletary Skinner filed a claim against the separate estate of the decedent, claiming that it owed the community estate of the decedent and Martha Singletary Skinner the sum of $12,313.89 for reimbursement of the payments made on the mortgage. The trial court found that the decedent had agreed with his children that he and his second wife could live in the house in return for paying the mortgage notes and keeping up the building.
On appeal, Martha Singletary Skinner contends the trial court erred in denying her claim against the separate estate of Thomas M. Skinner for reimbursement of mortgage payments made by the community of the decedent and Martha Singletary Skinner on the separate property of the decedent and the children.
The trial court found that the mortgage payments were paid as rent. The trial court stated in its reasons for judgment that “Thomas and his children entered into an agreement whereby Thomas was to pay the mortgage in exchange for being allowed to live in the home with his new bride. The mortgage payments were paid, as rent for the children’s one-half interest. Thus, the agreement between Thomas and his children was a verbal lease of the children’s one-half interest.”
We do not reach various issues raised on behalf of Martha Singletary Skinner to the effect that the mortgage payments could not constitute consideration for a rental agreement. After considering the evidence we find the trial judge’s finding that a lease agreement was entered into was manifestly erroneous. A lease agreement may be made as a written or verbal contract. LSA-C.C. art. 2683. Nevertheless, there must be a contract. LSA-C.C. arts. 2669 and 2670 provide as follows:
“Art. 2669. Lease or hire, definition
“Lease or hire is a synallagmatic contract, to which consent alone is sufficient, and by which one party gives to the other the enjoyment of a thing, or his labor, at a fixed price.”
“Art. 2670. Essential elements of lease
“To the contract of lease, as to that of sale, three things are absolutely necessary, to wit: the thing, the price, and the consent.”
The only evidence concerning a rental or lease agreement was testimonial consisting of testimony of Martha Singletary Skinner and Sharon Skinner Fuller. The former denied any knowledge of any such agreement between the deceased and his children. (Tr. 112 and 113) The testimony of Sharon Skinner Fuller, as it appears on pages 126 and 127 on direct examination and on pages 128 and 129 on cross-examination, was as follows:
“Q Now, let me ask you something. Your father, Mr. Skinner, and Mrs. Martha Skinner stayed in a place that you and he — that you and your brother owned a half, is that correct?
Right. <
Did you and your father ever talk about any rent? O*
No, we did not. It was just understood that he would pay the notes and keep the upkeep of the house. I would not ask—
In lieu of rent? <©
Right, I would not ask for rent. i>
Did he tell you that? <©
Yes, he did. í>
Did — uh—that was your agreement. He could stay there as long as he maintained it and paid the house notes? <o
That’s true. !>
Now, this is far and considerable less than what you could have rented it for, is that correct? .©
That's true. i>
Did you and your father and your brother (sic) as to what would happen to the proceeds in the event this home was sold? «©
Well, he would give us our share of it.
*537 Q Did you (sic) father ever pay for any rent for this place?
A No, he did not.
Q You didn’t expect any rent over and above—
A No, I did not. I would not take rent.
Q All you wanted was the house note paid?
A Right, and the upkeep of the house.
Q And insurance?
A Right.”

“Q Now, you — did—you never had any discussions with Mrs. Skinner about any rent, did you?
A No, I did not.
Q In fact, you never really had any discussions with your daddy about rent. It was just an understanding, is that what I gathered?
A Well, we’ve all — I would never take rent. I would never insist on part of any kind of money that belonged to him while he was living.
Q Okay, but you’ve changed...
A I would not expect it.
Q ... your mind now and you want rent?
A Well, she’s wanting all the payments out of the upkeep of the house.
Q Umm-hum.
A The improvements that she’s put in.
Q Umm-hum. Okay.
A I didn’t up until then.”
In our opinion this testimony does not establish that an agreement was made between Thomas Morris Skinner, the father, and his two children that he and his second wife would lease the house belonging to the first community and that payments of the mortgage note installments would constitute the rental. The son did not testify. At most the daughter’s testimony quoted above would show some understanding which was never matured into a specific agreement of lease. We can appreciate the fact that children of a prior marriage of a father and a second wife may consider the fact of occupancy of community property acquired during the first marriage to be too delicate a matter for exaction of a specific agreement as to the terms of occupancy. Nevertheless, since the children in this case urge that a lease agreement did exist, we must test the existence of such an agreement by applicable law.
For the foregoing reasons we conclude that the separate estate of the decedent is indebted to the community estate of the decedent and Martha Singletary Skinner in the sum of $12,303.89 and it is entitled to reimbursement for that amount. That portion of the judgment to the contrary should be reversed and Martha Singletary Skinner is entitled to reimbursement from the separate estate of the deceased for one-half of that amount, $6,156.95. LSA-C.C. art. 2364.
It is therefore ordered, adjudged and decreed that the judgment of the trial court rendered September 8, 1983 and signed on November 16, 1983 be reversed in the particulars mentioned above, and judgment is now rendered in favor of plaintiff-in-rule, Martha Singletary Skinner, ordering that she be reimbursed the sum of $6,156.95 by the Succession of Thomas Morris Skinner to reimburse her for one-half of the community funds belonging to the community of acquests and gains which formerly existed between her and the deceased expended as mortgage payments on separate property of the decedent located at 6702 Isabella Drive, Alexandria, Louisiana.
The cost of this appeal is assessed to appellees.
REVERSED AND RENDERED.